UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
- - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

Plaintiff,

vs.

IAN JACOB WALLACE,

Defendant.
_____________________________________/

No. 2:08-CR-39

Hon. ROBERT HOLMES BELL
United States District Judge

**GOVERNMENT'S SENTENCING MEMORANDUM**

Comes now the United States of America by United States Attorney Donald A. Davis and Assistant United States Attorney Hagen W. Frank and submits its Sentencing Memorandum pursuant to LCrR 32.2(h).

Sentencing Standards

Notwithstanding the decision in United States v. Booker, 543 U.S. 220 (2005), sentencing courts are still required to correctly compute the advisory Sentencing Guideline range and are still obliged to consider them when imposing sentence. United States v. Gale, 468 F.3d 929, 934 (6th Cir. 2006). Accordingly, a sentencing court's Guidelines calculations are still reviewed according to pre-Booker standards. United States v. Davidson, 409 F.3d 304 (6th Cir. 2005). It is now firmly established, however, that sentencing courts have the discretion to impose a sentence outside the advisory Guideline range based upon their articulated balancing of the statutory sentencing factors of 18 U.S.C. § 3553(a), the facts of the case, and the arguments of the parties. United States v. Lalonde, 509 F.3d 750, 769 (6th Cir. 2007) (citing United States v. Gall, 128 S. Ct. 586 (2007)). Taking all these matters into consideration, a sentencing court's

duty is to impose an individualized sentence that is "sufficient, but not greater than necessary" to satisfy the statutory purposes of sentencing set out in 18 U.S.C. § 3553(a). Id. at 770.

On review, sentences are reviewed for procedural and substantive reasonableness. Whether a sentence is procedurally reasonable depends upon: (1) whether a district court correctly calculated the applicable Guidelines range and used it as a start point of its sentence analysis; (2) whether the parties were given the opportunity to argue for sentences they deemed appropriate and whether a district court made an individualized sentencing decision based upon the facts and the § 3553(a) factors; and (3) whether a district court explained its reasoning with enough detail to both allow for meaningful appellate review and to give the impression of fair sentencing. United States v. Bolds, 511 F.3d 568, 579-80 (6th Cir. 2007).

With respect to substantive reasonableness, all sentences are reviewed for abuse of discretion, but sentences from within the Guideline range are presumed reasonable. United States v. Vonner, 516 F.3d 382 (6th Cir. 2008) (reconfirming the holding of United States v. Williams, 436 F.3d 706 (6th Cir. 2006) in light of the holding in Rita v. United States, 558 U.S. 338 (2207)). The substantive reasonableness of a sentence that varies outside the Guideline range is reviewed only for abuse of discretion, without benefit or burden of a presumption in its favor or to its detriment. Bolds, 511 F.3d at 579-80 (citing Gall, 128 S. Ct. at 597). Indeed, district courts are given "wide latitude in imposing sentences outside the Guidelines . . . so long as the explanation sufficiently articulates the sentence's appropriateness in relation to the 18 U.S.C. § 3553(a) sentencing factors." United States v. Johnson, 553 F.3d 990, 996 (6th Cir. 2009). Although the standards for determining whether a sentence is substantively unreasonable continue to develop, a sentencing court may abuse its discretion where it "'select[s] the sentence

arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553 (a) factors or gives an unreasonable amount of weight to a pertinent factor.'" Lalonde, 509 F.3d at 770 (quoting United States v. Jones, 489 F.3d 243, 252 (6th Cir. 2007) (alterations in original)).

While it is not error for a district court to acknowledge the appellate standards under which a sentence will be reviewed, United States v. Cage, 458 F.3d 537, 541 (6th Cir. 2006), a district court's sentencing lodestar is the need for a sentence that is sufficient without being excessive. United States v. Foreman, 436 F.3d 638, 6344 n.1 (6th Cir. 2006).

The Government's Perspective

By all indications known to the Government, Defendant Ian Wallace is a young man who, after engaging in a series of serious felonies between the ages of 18 and 20 years, corrected his course in life in 2002 and set out to make himself a high-achieving and productive member of society. Now, years later, and through a combination of the eight-year statute of limitations of 18 U.S.C. § 3286(a) and investigative successes that were long in coming for the Government, Ian Wallace's past has come back to harm him. The Government wishes first that Defendant had not done the things he did, and wishes second that – those acts having been committed – it could have caught Defendant much earlier. Because neither wish is capable of being granted, this Court faces the difficult task of crafting an appropriate sentence for a promising young man of 27 years for things he did when he was barely more than a child.

The Court has before it a lengthy and detailed Presentence Investigation Report[1] (PSR), and the plea-agreement also contains an extremely detailed factual summary that Defendant

[1] The Court may accept undisputed PSR assertions as findings of fact. Fed. R. Crim. P. 32(i)(3)(A)

stipulated to. Plea-agreement at 2-6 (Docket entry No. 3). The Government submits that these two fact sources answer the "who did what, when, and for what reason?" questions, and therefore has nothing to add to it. However, even though there may not be any factual disputes for the Court to resolve, for the reasons noted, the Government would not be surprised if the Court finds the task of crafting an appropriate sentence in this case to be especially difficult.

On the one hand, Defendant participated in a series of premeditated, highly destructive, and at times dangerous acts of property destruction. Further, all of these acts were committed for the express purpose of instilling fear in people and organizations who were engaged in lawful activities, of intimidating them on behalf of the "Earth Liberation Front" from doing things that Defendant and his companions did not like, and of trying to influence the orderly conduct of government through coercion. Finally, Defendant's acts contributed directly to the significant law-enforcement problem posed by violent animal-rights and eco-defense fanaticism, a problem that was described in 2002 by the FBI's Domestic Terrorism Section Chief in testimony before Congress thus:

> During the past decade, we have witnessed dramatic changes in the nature of the [domestic] terrorist threat. In the 1990's, right-wing extremism overtook left-wing terrorism as the most dangerous domestic terrorist threat to the country. During the past several years, special interest extremism, as characterized by the Animal Liberation Front (ALF) and the Earth Liberation Front (ELF), has emerged as a serious terrorist threat.

The Threat of Eco-Terrorism (Feb. 12, 2002) (testimony of James F. Jarboe), available at http://www.fbi.gov/congress/congress02/jarboe021202.htm

When this testimony was given, the FBI estimated that ELF and ALF had been responsible for approximately 600 criminal acts in the United States since 1996, causing damages of over $43 million. Id. As stipulated to by Defendant, his own misconduct contributed

some $1,655,000 to that total. Plea-agreement at 5, para. 5.F. (Docket entry No. 3). Moreover, at the same time that the FBI was educating Congress about the problem in 2002, Defendant was just then withdrawing from the ELF organization and movement. Defendant's crimes were therefore not only extremely serious in their own right, they were also directly connected to the criminal trend that eclipsed right-wing extremism as the FBI's primary domestic terrorism concern during the decade that straddled the millennium.

The foregoing facts suggest a need for significant punishment. On the other hand, the Court may find that other facts pull as strongly in the opposite direction. First, and as noted, Defendant voluntarily abandoned his violent extremism in 2002, many years before this prosecution commenced, and became a productive member of society without the compulsion of imminent discovery or punishment. Mr. Wallace has also done every thing he could to make amends for his past misconduct during the course of this prosecution. Moreover, and to the extent that motive may ameliorate, his crimes were not motivated by a desire for personal profit or advancement.

A Sufficient, But Not Excessive, Sentences

On the issue of the appropriate quantum of punishment for Defendant, the Government submits that, due to the consequences of the terrorism enhancement of USSG § 3A1.4, the Court might find the advisory Guideline range to be less helpful than usual as a guide in fashioning a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a).

There is no question but that the terrorism enhancement applies to domestic as well as international terrorism offenses. See, e.g., United States v. Graham, 275 F.3d 490, 516 (6th Cir.

2001); United States v. Nichols, 169 F.3d 1255, 1270 n.3 (10th Cir. 1999). There is also no question but that it applies even where a defendant did not intend to physically harm another person, so long as he or she committed a "federal crime of terrorism" within the meaning of 18 U.S.C. § 2332b(g)(5), which includes destruction or attempted destruction of United States property when done for the purpose of intimidating or coercing the conduct to government. However, when applied to a domestic offense that did not result in physical injury and was apparently not intended to cause a physical injury, the Government submits that the Court might reasonably conclude that, in light of the dramatic consequences of its application, § 3A1.4 has at least the potential to cause the seriousness of an offense to be overstated to some extent.

If the Court elects to grant the full four-level departure requested in the Government's § 5K1.1 motion, (Docket entry No. 21), which motion would produce a range of 70 to 87 months, then the Government's observation regarding the effect of § 3A1.4 becomes less significant in this case with respect to the offense level. The Government's § 5K1.1 motion can not, however, rein in the other dramatic consequence of the terrorism enhancement, that being the automatic assignment of Criminal History Category (CHC) VI. As a result, even if it grants the § 5K motion, the Court might still find the Guideline recommendation unhelpful[2] in fashioning the particularized sentence called for by § 3553 if it concludes that the consequences

---

[2]Here, the Guidelines counsel imposition of a 120 month sentence and, but for the fact that the Government resolved this case by a plea to a 10-year felony, those same Guidelines would have counseled a sentence of between 292-365 months. PSR at 18, para. 64. Acknowledging that sentencing is a judicial function, the Government submits nonetheless that a sentence within the latter range would have been outside the realm of reason even if allowed by the statutory maximum. Because the "one size fits all" approach of § 3A1.4 does not allow for gradations of culpability or harm, the Court might reasonably conclude that it is too blunt an instrument in this case to even be helpful as a backdrop to the 120-month sentence recommended by § 5G1.1(a).

of assigning CHC VI are too severe in this case for this Defendant. In that event, the Government acknowledges that the Court's sentencing discretion empowers it to take corrective action as it deems appropriate. See, e.g., United States v. White, 551 F.3d 381, 386 (6th Cir. 2008) (en banc) ("[O]ne of the central points of Booker, highlighted by Kimbrough[,] is that a district court judge may disagree with the application of the Guidelines to a particular defendant because the Guidelines range is too high or too low to accomplish the purposes set forth in § 3533(a).") (internal citations omitted).

In closing, the Government notes that it struggled with the charging decision when it brought this case – not with respect to the decision whether to prosecute Defendant, but with respect to the decision of how to prosecute him. On the one hand, Defendant engaged in serious misconduct that could not go unaddressed, and on the other hand he corrected himself and built the foundation of a bright future. Further, the backdrop to any prosecution was the terrorism enhancement of § 3A1.4 and its potentially severe consequences.

The Government elected to resolve the case by securing a conviction to a less serious felony than it could have proven – Section 1361 vice Section 844 – but that decision did not complete the heavy lifting. The even heavier lifting of imposing an appropriate sentence remains to be done, and that duty falls to the Court alone.

WHEREFORE, the United States requests the Court impose a sentence that is sufficient, but not greater than necessary, to achieve the statutory purposes of sentencing.

Respectfully submitted,

DONALD A. DAVIS
United States Attorney

Dated: 17 March 2009

/s/ H.W. Frank
HAGEN W. FRANK
Assistant United States Attorney